# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| WALTER L. LUTON, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Case No. CIV-18-112-SPS |
| | ) |
| ANDREW M. SAUL, | ) |
| **Commissioner of the Social** | ) |
| **Security Administration,** [1] | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Walter L. Luton requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the Commissioner's decision is REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he

---

[1] On June 4, 2019, Andrew M. Saul became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Mr. Saul is substituted for Nancy A. Berryhill as the Defendant in this action.

is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality

---

[2] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was forty-seven years old at the time of the administrative hearing (Tr. 157). He completed tenth grade and has worked as a construction worker and automobile service station mechanic (Tr. 33, 51). The claimant alleges that he has been unable to work since January 1, 1994, due to depression, anxiety, degenerative disc disease, neck problems, and back problems (Tr. 174-75).

**Procedural History**

On November 13, 2014, the claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85 (Tr. 157-59). His application was denied. ALJ Anne H. Pate held an administrative hearing and determined that the claimant was not disabled in a written opinion dated April 12, 2017 (Tr. 12-20). The Appeals Council denied review, so the ALJ's written opinion represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made her decision at step five of the sequential evaluation. She found the claimant had the residual functional capacity ("RFC") to perform a limited range of light work, *i. e.,* he could lift and carry twenty pounds occasionally and ten pounds frequently, sit/stand/walk six hours in an eight-hour workday, and occasionally climb and stoop (Tr. 16). Due to psychologically-based limitations, the ALJ also found the claimant could

perform simple tasks with routine supervision, relate to supervisors and peers on a superficial basis, and adapt to a work setting and some forewarned changes in a usually stable work setting, but could not work with the general public (Tr. 16). The ALJ then concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform in the national economy, *i. e.,* housekeeper cleaner, domestic laundry worker, and carwash attendant (Tr. 18-20).

**Review**

The claimant contends that the ALJ erred by: (i) failing to account for his neck pain, headaches, and shoulder problems in formulating the RFC; (ii) relying on vocational expert ("VE") testimony at step five that was inconsistent with the Dictionary of Occupational Titles ("DOT"); and (iii) failing to properly evaluate his subjective statements. The Court agrees that the ALJ erred in formulating the RFC, and the decision of the Commissioner must be reversed and the case remanded to the ALJ for further proceedings.

The ALJ found the claimant had the severe impairments of osteoarthritis of the cervical and lumbar spine, obesity, major depressive disorder, and anxiety disorder (Tr. 14). The relevant medical evidence reveals that the claimant underwent an MRI of his lumbar spine on October 26, 2012, which was unremarkable (Tr. 355). Thereafter, physician assistant Tommie Stanberry treated the claimant for low back pain from November 2012 through April 2013 and for shoulder pain in February 2013 (Tr. 319-23).

The claimant established care with Dr. Paul Reel in November 2013 and reported migraine headaches that occurred once every week or two as well as low back pain

(Tr. 317-19). On physical examination, Dr. Reel found decreased range of motion in the claimant's lumbar spine (Tr. 318). He assessed the claimant with lumbago, migraine headache, and muscle spasm, and prescribed medications (Tr. 318-19). At a follow-up appointment in December 2013, the claimant indicated that the muscle relaxant caused a severe migraine and he reported experiencing left shoulder discomfort for the past four years but indicated that it did not limit his daily activities (Tr. 316). Thereafter, Dr. Reel treated the claimant's pain with anti-inflammatory medication through October 2016 and added a narcotic pain medication in April 2016 (Tr. 310-16, 367-90). He also recommended strengthening exercises for the claimant's neck and back muscles as well as weight loss (Tr. 373, 379, 390). Dr. Reel's physical examinations of the claimant's neck, back, and musculoskeletal system were normal except for a notation in September 2015 that the claimant's cervical spine showed the abnormalities of pain and discomfort (Tr. 374, 379, 381, 383, 385, 389). The claimant then regularly denied experiencing headaches to Dr. Reel until October 2016 (Tr. 367, 374, 378, 380, 382, 384). After the claimant's reports of shoulder pain in February 2013 and December 2013, he next reported shoulder pain in April 2016 and October 2016 (Tr. 367, 370).

Dr. S.A. Chaudry completed a consultative physical examination of the claimant on November 7, 2016 (Tr. 358-64). He found full range of motion with pain in the claimant's cervical spine and lumbosacral spine and tenderness in his bilateral trapezius muscles and bilateral paraspinous muscles (Tr. 359-61, 364). His impression included osteoarthritis of the cervical spine and the lumbosacral spine (Tr. 360).

On January 13, 2015, state agency physician Dr. Donald Baldwin completed a Physical RFC Assessment and found that the claimant could perform light work with occasional stooping and either occasional or never climbing ladders, ropes, or scaffolds (Tr. 60-62).[3] His findings were affirmed on review (Tr. 74-76).

At the administrative hearing, the claimant testified that he was unable to work due to pain in his neck and low back (Tr. 35). He further testified that his neck pain "comes and goes" and that his medications help (Tr. 37-38). He indicated that sitting up straight in a chair increases his neck pain but doing tasks around the house does not (Tr. 37-38). As to his back pain, the claimant stated that his medications ease the pain so that he can "get around" and that he uses a back brace ninety-eight or ninety-nine percent of the time (Tr. 38-39). He further stated that in an eight-hour day he lays down two or three times for thirty or forty-five minutes due to stiffness (Tr. 39-40). As to specific limitations, the claimant testified that he could carry seven or eight pounds, sit for an hour and forty-five minutes, stand for thirty minutes, walk for forty-five minutes, and reach something on a top shelf, but could not reach out front, and could not move his neck left, right, up, or down when he was in pain (Tr. 41-43).

In her written opinion, the ALJ summarized the claimant's testimony and the medical record. She gave great weight to the state agency physicians' opinion that the

---

[3] The state agency physicians indicated that the claimant could occasionally climb ladders, ropes, and scaffolds, but when explaining their postural limitations and how and why the evidence supported their conclusions, they also stated "The [claimant] can be expected to stoop occasionally and can never be expected to climb ladders, ropes and scaffolds in an 8 [hour] work period." (Tr. 61, 74-75). Although not raised by the claimant, the Court notes that this evidence appears to conflict with the RFC and the ALJ should account for this omission on remand.

claimant could perform light work with postural limitations, but further limited the claimant to occasional climbing ramps and stairs without explanation (Tr. 18). In discussing the medical evidence at step four, the ALJ did not mention or discuss the claimant's migraine headaches or shoulder pain.

The claimant therefore contends that the ALJ failed to properly consider his medically determinable impairments of headaches and shoulder pain. This Court and the Tenth Circuit have repeatedly stated that, once the ALJ determined that the claimant had *any* severe impairment, any failure to find additional severe impairments will not be a sole basis for reversal and is considered harmless. *See Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("Once the ALJ finds that the claimant has *any* severe impairment, he has satisfied the analysis for purposes of step two. His failure to find that additional alleged impairments are also severe is not in itself cause for reversal."). Nevertheless, the ALJ *is required* consider the effects of all the claimant's impairments (individually and in combination) and account for them in formulating the claimant's RFC at step four. *Id.* ("In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [emphasis in original] [citations omitted]. Here, the ALJ neither noted the claimant's headaches and shoulder pain nor determined what effect, if any, either may have had on the RFC. The Court is thus unable to determine whether the ALJ considered this evidence or simply ignored it. *See Clifton,* 79 F.3d at 1010 ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he

rejects."), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984). Although the ALJ was not required to find that the claimant's headaches and shoulder pain amounted to severe impairments, she *was* required to account for *all* his impairments, including his documented headaches and shoulder pain, at step four. *See McFerran v. Astrue*, 437 Fed. Appx. 634, 638 (10th Cir. 2011) ("[T]he ALJ made no findings on what, if any, work-related limitations resulted from Mr. McFerran's nonsevere mood disorder and chronic pain. He did not include any such limitations in either his RFC determination or his hypothetical question. Nor did he explain why he excluded them."). This is important, where, as here, the shoulder pain and headaches might have a compounding effect on the claimant's osteoarthritis and other severe impairments.

Because the ALJ failed to properly account for *all* the claimant's impairments at step four, the decision of the Commissioner must be reversed and the case remanded to the ALJ for further analysis. If such analysis results in any adjustment to the claimant's RFC, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether he is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner decision is accordingly hereby REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 12th day of September, 2019.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**